IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


STEPHEN P. FULS                                                        PLAINTIFF

          v.                 Civil No. 3:11-cv-03139-JRM

CAROLYN W. COLVIN, Commissioner of
Social Security Administration[1]                                     DEFENDANT

**MEMORANDUM OPINION**

## I.     Factual and Procedural Background

Plaintiff, Stephen P. Fuls, brings this action seeking judicial review, pursuant to 42 U.S.C.

§ 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying his applications for disability insurance benefits and supplemental security income pursuant

to Titles II and XVI of the Social Security Act ("the Act"), respectively.  42 U.S.C. ch. 7, subchs.

II, XVI.

Plaintiff protectively filed his Title II application on April 28, 2009.  Tr. 13.  On November

12, 2009, Plaintiff also protectively filed a Title XVI application.  Tr. 13.  In both applications,

Plaintiff alleged a disability onset date of January 1, 2007, due to back pain, bilateral knee pain,

carpal tunnel syndrome, anxiety, depression, anger, and memory problems.  Tr. 13, 155.  Plaintiff's

last date insured for Title II purposes was September 30, 2010.  Tr. 151.  On the alleged onset date,

Plaintiff was thirty-one years old with an eleventh grade education.  Tr. 22, 160.  He has past relevant

work as a general laborer.  Tr. 22.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 63-69, 75-79.
At Plaintiff's request, an administrative hearing was held on December 9, 2010.  Tr. 30-56.  The ALJ
rendered an unfavorable decision on January 18, 2011.  Tr. 6-18.  Subsequently, the Appeals Council
denied Plaintiff's Request for Review on November 9, 2011, thus making the ALJ's decision the
final decision of the Commissioner.  Tr. 1-4.  Plaintiff now seeks judicial review of that decision.

## II.   <u>Applicable Law</u>

The Court's role on review is to determine whether the Commissioner's findings are
supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583
(8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable
mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th
Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether
evidence is substantial, the Court considers both evidence that detracts from the Commissioner's
decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000)
(citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it
is possible to draw two inconsistent positions from the evidence and one of those positions
represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d
614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that
he is unable to engage in any substantial gainful activity due to a  medically determinable physical
or mental impairment that has lasted, or can be expected to last, for no less than twelve months.
*Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  The
Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether

-2-

the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## III.   **ALJ's Determination**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since January 1, 2007, the alleged onset date. Tr. 15. At step two, the ALJ found Plaintiff suffered from the following severe impairments: knee pain status post surgery, back pain, and depression. Tr. 15. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 16-17.

At step four, the ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except he could only occasionally lift/carry ten pounds and frequently lift/carry less than ten pounds, sit for six hours and stand/walk for two hours in an eight-hour workday, and occasionally climb, balance, crawl, kneel, stoop, and crouch. Tr. 17-22. Mentally, the ALJ determined Plaintiff could perform work in which interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few

variables and little judgment required, and the supervision required is direct, simple, and concrete. Tr. 17-22.

After eliciting vocational expert testimony, the ALJ found Plaintiff could perform the requirements of representative occupations such as small products assembler, of which there are 4,200 jobs in the regional economy and 84,000 jobs in the national economy, small production machine operator, of which there are 4,000 jobs in the regional economy and 76,000 jobs in the national economy, and small product inspector, of which there are 800 jobs in the regional economy and 41,000 jobs in the national economy. Tr. 23, 220. Accordingly, the ALJ determined Plaintiff was not under a disability from January 1, 2007, the alleged onset date, through January 18, 2011, the date of the administrative decision. Tr. 23-24.

**IV.**  **Discussion**

On appeal, Plaintiff contends the ALJ erred by: (A) determining his carpal tunnel syndrome and intermittent explosive disorder were non-severe; (B) improperly determining his RFC; and (C) disregarding the opinions of his treating physician. *See* Pl.'s Br. 8-17. Defendant argues that substantial evidence supports the ALJ's determination. *See* Def.'s Br. 4-15. For the following reasons, the court finds that substantial evidence does not support the ALJ's determination.

Plaintiff has a history of chronic knee pain, low back pain, wrist pain, and depression. An MRI of Plaintiff's right knee, dated August 30, 2007, revealed a small joint effusion to the center of the lateral side, a possible contusion of the lateral meniscus without tear identified, and a possible strain or partial tear of the lateral collateral ligament. Tr. 250. On September 25, 2007, Plaintiff underwent right knee arthroscopy, right partial medial meniscectomy, and plica resection. Tr. 251-252. Progress notes dated October 3, 2007, reveal that Plaintiff was doing well postoperatively and

had no complaints.  Tr. 254.  Physical examination revealed no effusion and full range of motion.
Tr. 254.

An MRI of Plaintiff's lumbar spine, dated January 10, 2008, revealed a very large central and
right paracentral disc herniation at L4-5, with mild foramen narrowing.  Tr. 352.

On January 11, 2010, Plaintiff underwent a physical consultative examination with Shannon
Brownfield, M.D.  Tr. 263-267.  Physical examination revealed reduced range of motion of the
bilateral knees as well as the lumbar spine, and a gait with a stoop and limp to the right.  Tr. 265-266.
Dr. Brownfield diagnosed Plaintiff with lumbar back pain, bilateral knee pain, and depression/anger
management problems.  Tr. 267.  She noted globally moderate to severe limitations secondary to
depression,  moderate to severe limitation in the ability to maintain prolonged positions, and severe
limitation in the ability to lift.  Tr. 267.

On January 25, 2010, Plaintiff underwent a consultative mental evaluation with Stephen B.
Harris, Ph.D.  Tr. 273-281.  Dr. Harris diagnosed Plaintiff with pain disorder associated with both
psychological factors and general medical condition, depressive disorder not otherwise specified,
anxiety disorder not otherwise specified, communication disorder, mathematics disorder, and Cluster
B personality traits.  Tr. 276.  Dr. Harris estimated Plaintiff's Global Assessment of Functioning
("GAF") score at 55.  Tr. 276.  He found Plaintiff was capable to coping with basic work-like tasks,
concentrating and attending, persisting in completing tasks, and performing tasks within an
acceptable time frame, provided that he did not become frustrated.  Tr. 276-277.  Dr. Harris also
noted some social withdrawal and potential difficulty in social situations.  Tr. 276.

X-rays of Plaintiff's knees, dated February 5, 2010, revealed signs of early osteoarthritis.  Tr.
287.  X-rays of Plaintiff's lumbar spine revealed disc space narrowing at L4-5, but no other

abnormalities.  Tr. 287.

In March 2010, Plaintiff presented to Mission Medical Clinic with complaints of bilateral knee and wrist pain, as well as lower back pain.  Tr. 320.  On examination, Plaintiff had decreased range of motion and a positive straight leg raise.  Tr. 324.  He also had a positive Tinel's sign.  Tr. 324.  Plaintiff was assessed with lumbar pain and right lower extremity pain, likely discogenic, and possible carpal tunnel syndrome, for which he was issued wrist splints.  Tr. 324.

From June 2, 2010, through September 15, 2010, Plaintiff was treated at Boston Mountain Rural Health Center for depression as well as low back, pain, knee pain, and carpal tunnel syndrome.  Tr. 331-350.  He was treated with prescription medication, including Celexa, Hydrocodone, Cyclobenzaprine, Lortab, Mobic, Darvocet, and Percocet.  Tr. 332-336, 344.  Plaintiff reported overall improvement on Celexa.  Tr. 332.  He denied crying spells and stated he was using coping mechanisms he had learned in therapy to address his anger outbursts.  Tr. 332.

An MRI of Plaintiff's right knee, dated June 29, 2010, revealed focal thickening along the medial side of the patellar tendon at the level of the inferior pole of the patella, as well as adjacent osteophyte formation, which could be degenerative or post-traumatic.  Tr. 353.  There was no convincing evidence of tendon tear, but a small effusion was noted.  Tr. 353.  An MRI of Plaintiff's lumbar spine, dated August 23, 2010, revealed focal degenerative disc disease at L4-5 with a broad base posterior disc protrusion as well as a prominent midline posterior annular fissure causing mild canal and significant bilateral foramen narrowing.  Tr. 334.

Plaintiff was treated by Russell Allison, M.D., at Arkansas Orthopaedic Institute, for worsening right knee pain.  Tr. 367-382.  On September 23, 2010, Plaintiff underwent a right knee arthroscopy with chondroplasty of the patellofemoral compartment and partial medial and lateral

meniscectomies.  Tr. 365-366.  Following surgery, Plaintiff completed two weeks of physical therapy.  Tr. 389-393.  He completed 100% of his objective and personal goals and was discharged with no functional limitations in his daily activities.  Tr. 391.  At a followup appointment, Plaintiff stated his knee was much better and he was "able to run on it some."  Tr. 402.

On December 1, 2010, Richard Sayner, Ph.D., completed a Medical Source Statement.  Tr. 360-363.  Dr. Sayner assessed several marked and moderate limitations in Plaintiff's functional abilities.  Tr. 360-363.  He noted that Plaintiff demonstrated some attention and comprehension deficits and his persistence and concentration would likely be influenced by chronic depression and a longstanding pattern of labilty/anger.  Tr. 361-362.  Dr. Sayner noted that Plaintiff's anger and frustration were observed in treatment, especially if Plaintiff had to wait for his therapist.  Tr. 362. He opined that Plaintiff should continue treatment, as he had shown initial, moderate improvement. Tr. 363.

On December 21, 2010, Plaintiff returned to Arkansas Orthopaedic Institute with complaints of bilateral wrist pain.  Tr. 395-397.  On examination, Plaintiff had a positive Tinel's and Phalen's sign in both wrists.  Tr. 396.  He was diagnosed with bilateral carpal tunnel syndrome and a ganglion cyst.  Tr. 397.  Timothy Stone, M.D., recommended carpal tunnel release and volar ganglion excision.  Tr. 397, 412-414.

In July 2011, Plaintiff began receiving mental health treatment at Health Resources of Arkansas.  Tr. 446-464.  Plaintiff was diagnosed with major depressive disorder, recurrent, severe, without psychosis, generalized anxiety disorder, and intermittent explosive disorder.  Tr. 457. Plaintiff's GAF score was estimated at 42.  Tr. 457-458.  He was treated with Lamictal and Risperdal.  Tr. 448.

On July 28, 2011, Plaintiff underwent a right carpal tunnel release without complication.  Tr. 411, 416-444.

Plaintiff submitted new medical evidence to the Appeals Council, which consisted, in part, of updated medical records concerning Plaintiff's alleged carpal tunnel syndrome.  Tr. 4.  Under the regulations, "if a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."  *Williams v. Sullivan,* 905 F.2d 214, 216 (8th Cir. 1990) (emphasis in original).  Once it is clear that the Appeals Council has considered newly submitted evidence, the court does not evaluate the Appeals Council's decision to deny review.  *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).  Instead, the court's role is limited to deciding whether the ALJ's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.  *Id.*  Of necessity, that means the court must speculate to some extent on how the ALJ would have weighed the newly submitted reports if they had been available for the original hearing.  *Id.*

The ALJ determined Plaintiff's carpal tunnel syndrome was non-severe.  Tr. 15.  In fact, the ALJ's only reference to carpal tunnel syndrome was as follows:

> The undersigned affords less weight to the opinion diagnosing the claimant with carpal tunnel syndrome as the undersigned finds that these opinions are not supported by objective medical evidence.

Tr. 21-22.

After reviewing evidence of record, the court cannot conclude that substantial evidence supports the ALJ's determination that Plaintiff's carpal tunnel syndrome has no more than a minimal

-8-

impact on his ability to work.  *See Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir.2001), *citing Nguyen v. Chater,* 75 F.3d 429, 430-31 (8th Cir.1996).  Plaintiff's updated medical records clearly reflect a significant worsening of his carpal tunnel syndrome.  Although Plaintiff did not undergo carpal tunnel release until several months after the ALJ issued his decision, he was diagnosed with and treated for carpal tunnel syndrome during the relevant time period.  A March 2010 examination revealed a positive Tinel's sign.  Tr. 324.  Plaintiff was assessed with possible carpal tunnel syndrome, for which he was issued wrist splints.  Tr. 324.  Moreover, Plaintiff specifically referenced his upcoming nerve study at the administrative hearing, which should have alerted the ALJ that further development was warranted.  Tr. 39-40.

For these reasons, the undersigned recommends that this case be remanded for further development of the record concerning Plaintiff's carpal tunnel syndrome and how it affects his ability to perform substantial gainful activity.  Accordingly, this matter should be remanded to the Commissioner for further consideration of the issue of Plaintiff's RFC, based on all relevant evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of his own limitations.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

## V.    Conclusion

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 19th day of March 2013.

/s/ *J. Marschewski*

HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE